UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DANFORD PUAHIKI KULANI KAEO, JR.,

                Plaintiff,                Case Number 13-14287

v.                                                    Honorable David M. Lawson

COMMISSIONER OF SOCIAL SECURITY,

                Defendant.

_____/

**OPINION AND ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT, GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, AFFIRMING DECISION OF THE COMMISSIONER, AND DISMISSING COMPLAINT WITH PREJUDICE**

Plaintiff Danford Puahiki Kulani Kaeo, Jr., filed the present action on his own behalf challenging the decision of the Commissioner of Social Security to deny him disability benefits. The case initially was referred to a magistrate judge under 28 U.S.C. § 636(b) and E.D. Mich. LR 72.1(b)(3). Thereafter, the parties filed cross motions for summary judgment. Since then, the Court has withdrawn the reference and will address the parties' motions without the benefit of a report from a magistrate judge. For the reasons that follow, the Court finds that the decision of the administrative law judge (ALJ) that the plaintiff is not disabled within the meaning of the Social Security Act is supported by substantial evidence in the record. Therefore, the Court will grant the defendant's motion for summary judgment, affirm the findings of the Commissioner, and dismiss the complaint.

I.

The plaintiff, who is now 47 years old, filed his current application for a period of disability and disability insurance benefits under Title II of the Social Security Act on December 14, 2009. He alleged a disability onset date of October 30, 2008. The plaintiff completed high school and has

worked as a fueler, mechanic, and systems technician. He was working at that last job when he injured his back. At that time, his duties included servicing and installing DSL lines. The job required prolonged standing, occasional heavy lifting, repetitive bending from the waist, stooping and kneeling, and the use of both upper extremities for fine manipulative tasks. He also was required to carry equipment up flights of stairs and climb telephone poles. His employer, Pacific Bell/AT&T, found that the plaintiff was temporarily totally disabled due to lumbar radiculopathy and chronic lower back pain. Treating and examining doctors diagnosed the plaintiff with lumbar radiculopathy and chronic lower back pain.

The medical records reveal that the plaintiff has suffered from lower back pain since 1999, when he was injured moving a co-worker's heavy desk while working at Pacific Bell/AT&T. Tr. 237. Although he experienced periodic back pain, and was off work for about two weeks, the plaintiff was able to continue working at the same job. *Ibid.* He sought treatment with a chiropractor, Dr. Ronald Desmarais, who gave him some relief. He continued to treat on his own with Dr. Demarais intermittently through 2006.

In January 2006, the plaintiff was injured at work again. During training, he was asked to climb a pole and felt pain in his low back. He was told to rest and try again, but on his second try the pain returned. At that time the plaintiff learned that Dr. Desmarais was not an accepted network provider, so the plaintiff transferred to Dr. Lisa Key at the Kaiser occupational medicine clinic. He was treated with analgesics and had to use crutches for a couple weeks. He worked at restricted duty for approximately six weeks, and then returned to work without restrictions.

In October 2006, the plaintiff reported an injury when he was walking and stepped off a curb, whereupon he felt a shooting pain in his right foot that radiated up his leg. There was no fracture,

but he was off work for a while. Tr. 676. In 2007, the plaintiff continued with chiropractic care furnished by Dr. David Ressler, whom the plaintiff saw through his wife's health insurance. He treated with him only for a few sessions in August 2007 and derived temporary relief.

On October 30, 2008, while twisting and turning to work on a computer in the company van, his back flared up again. Tr. 237, 675. The plaintiff sought treatment at Kaiser Occupational Clinic in California, where he was diagnosed with lumbar radiculpathy and chronic lower back pain. *Ibid.* An X-ray revealed mild degenerative changes at L4-L5. Tr. 474. The plaintiff received pain medication and chiropractic care, and was placed on modified duties consisting of no lifting, carrying, pushing or pulling in excess of 10 pounds and was required to be allowed to sit and stand at will. Tr. 474, 20. Because his employer was unable to accommodate him, he received temporary total disability. Tr. 237.

In November 2008, the plaintiff began treating with Dr. Hessam Noralahi, an internist. Tr. 566. He complained of constant sharp and sometimes burning pain across his lumbar region that radiated to his buttocks as well as his leg, with associated numbness and tingling. Tr. 567. On physical examination, Dr. Noralahi detected muscle spasms and guarding over the bilateral paraspinal muscle and a moderate level of guarding. Tr. 569. The plaintiff had moderate difficulty walking on his heels and toes due to his level of pain. *Ibid.* Dr. Noralahi recommended a short course of conservative care, including manipulation therapy. *Ibid.*

On December 20, 2008, an MRI was performed because the plaintiff's symptoms were not improving. The MRI revealed L4-L5 circumferential broad based disc bulging along with facet arthropathy resulting in moderately severe bilateral foraminal narrowing; L3-L4 irregular broad based posterior disc bulge with annular fissure; and L5-S1 1 mm broad based disc protrusion. Tr.

609. An EMG of the lower extremities revealed chronic changes consistent with an old injury involving the bilateral S1 nerve roots. Tr. 583-84. The plaintiff received a lumbar epidurial steroid injection at the L5-SI level on March 10, 2010. Tr. 682. The plaintiff reported a 70 percent decrease in leg pain, although he continued to experience pain in his lower back. *Ibid.*

Dr. Calvin Pon, a physical medicine specialist, performed a consultative orthopedic disability evaluation of the plaintiff on April 23, 2010 at the request of the Social Security Administration. Dr. Pon noted that the plaintiff drove to the appointment, takes out the garbage, could get on and off the exam table normally, and sat comfortably during the exam. Tr. 477-78. He complained of bilateral lower extremity pain and bilateral foot numbness. Tr. 477. He was overweight and had high blood pressure. *Ibid.* The plaintiff had a normal gait, except for shorten strides; he walked without aid. Tr. 478. He had limited range of motion in his hips and knees. Tr. 479. Dr. Pon concluded that the plaintiff could stand or walk for a total of 4 to 6 hours during an 8-hour workday; he could sit for a total of 6 hours during an 8-hour workday; he could only occasionally stoop, crouch, kneel, squat, or climb ladders; he could climb stairs on an occasional to frequent basis; he could frequently use leg-foot controls; and he could lift and carry ten pounds frequently and 20 pounds occasionally. *Ibid.*

On May 26, 2010, Dr. Linda Pancho, another consultant, performed a physical residual functional capacity assessment on the plaintiff based on a records review. Tr. 497-502. Dr. Pancho concluded that the plaintiff could occasionally lift or carry 20 pounds or frequently lift or carry 10 pounds; stand or walk about 6 hours in an 8-hour workday; and sit about 6 hours in an 8-hour workday. She also opined that there were no restrictions on his ability to use hand or foot controls;

he could occasionally climb ladders, ropes, scaffolds, stoop, kneel, crouch, and crawl; and he could frequently climb stairs and balance. Tr. 500.

The plaintiff began treating with Dr. Nathan Morello, a chiropractor, in October 2007. On August 13, 2010, Dr. Morello wrote a report that summarized the plaintiff's history, referred to office notes of physical examinations from October 2008 to August 2010, discussed the results of medical tests (referenced above), and concluded that the plaintiff "is unable to do work of any type due to the pain and weakness in his neck, hands, lowback [sic], and legs." Tr. 640-41.

On October 8, 2010, Dr. Sharon Amon, a consultant in Sacramento, California, performed a residual functional capacity assessment based on a review of the records and concluded that the plaintiff could return to work with the following limitations: he could frequently lift or carry only 10 pounds or occasionally lift 20 pounds; stand or walk at least 2 hours in an 8-hour workday; sit about 6 hours in an 8-hour workday; perform unlimited push and pull controls; occasionally climb stairs and ladders, stoop, kneel, crouch, and crawl; and he had no manipulative or visual limitations. Tr. 661-61.

On October 28, 2010, Dr. Timothy S. Lo, a neurologist, performed an examination for the purpose of a Panel Qualified Medical Evaluation. He spent approximately 125 minutes with the plaintiff and reviewed his medical records for approximately 4 hours and 45 minutes. Tr. 672. Dr. Lo detected muscle spasms and guarding in the plaintiff's lower back, but noted that the plaintiff was able to get from a seated to standing position without significant difficulty and did not require usage of a cane or assistive device. He had a slightly antalgic gait, favoring the left side. Tr. 684. The plaintiff reported significant restrictions in his activities of daily living. Dr. Lo diagnosed lumbar degenerative disc disease, S1 radiculopathy, and chronic pain syndrome. He did not believe

that the plaintiff was a surgical candidate. Dr Lo concluded that the plaintiff had achieved maximum medical improvement. Tr. 686. Dr. Lo opined that the plaintiff was impaired and could not return to his technician job at AT&T. He believed that the plaintiff was restricted from repetitive bending at the waist; could lift more than 15 pounds on a regular basis; could not engage in prolonged sitting, standing, stooping, kneeling, or bending secondary to chronic lower back pain; could not climb telephone poles or ladders; and he had no restriction in the usage of the upper extremities. Tr. 690.

On March 3, 2011, Dr. Noralahi completed a comprehensive permanent and stationary report after meeting with the plaintiff and reviewing his medical records. She concluded that the plaintiff is permanent and stationary, but did not describe the plaintiff's work restrictions. Tr. 694-702.

The plaintiff's application for Social Security disability benefits was denied initially. The plaintiff made a timely request for an administrative hearing. On May 2, 2011, he appeared before ALJ Judson Scott when he was 43 years old. The plaintiff, represented by attorney Pamela Vincent, testified that he injured himself at work while twisting in the van to use the computer. Tr. 44. He reported that he has constant pain in his lower back that affects his ability to walk. Tr. 47. The plaintiff testified that he can only walk ten feet before experiencing back spasms, can only lift a carton of milk, and he experiences extreme pain in his lower back after sitting or standing for one or two minutes. Tr. 48-49. He said that he is unable to cook or clean and is limited to sticking a TV dinner into the microwave. Tr. 52-53. He testified that several doctors suggested that he participate in low-impact physical therapy to address his back pain. Tr. 41. However, the plaintiff said that he is unable to do physical therapy without first receiving epidurial shots in his lower back. *Ibid.* The plaintiff testified that the epidurial shots relieved the pain in his legs for six or seven months, but the

pain has gradually returned at a reduced level. Tr. 41-42. Although his doctor requested additional shots, the plaintiff testified that the insurance company denied the request. Tr. 42.

Dr. Joseph Jensen, an orthopedic specialist, testified, after reviewing the plaintiff's medical records, that the plaintiff has multilevel lumbar spine degenerative disc disease and moderate obesity, but those conditions do not meet or equal any listing in the regulations. Tr. 60-61, 64. Dr. Jensen described the plaintiff's work restrictions as follows: occasionally lifting and carrying up to 20 pounds or 10 pounds frequently; standing and walking up to 6 hours or sitting for 6 hours; he requires a stand/sit option; he cannot walk full flights of stairs, but can occasionally manage 3 steps and ramps; occasional bending, stooping, crouching, kneeling, and crawling; occasionally can operate foot pedals bilaterally; he cannot use ladders or reach above shoulder level; and he can only occasionally walk on uneven terrain. *Id.* at 62-64.

Diana Wong, a vocational expert, testified that the plaintiff cannot perform any of his previous work as a mechanic or systems technician. Tr. 71, 73. The ALJ asked Dr. Wong if there were jobs in the national economy that the plaintiff could perform assuming he had the following limitations: lifting and carrying 10 pounds frequently and 20 pounds occasionally; sitting, standing, and walking for 6 hours in an 8-hour day; a sit/stand option; no use of ladders, ropes, or scaffolds; no crawling or climbing stairs, but climbing ramps is allowed; ability to perform gross and fine manipulations on a frequent basis; reaching over head occasionally; no exposure to heavy industrial vibrations or industrial hazards such as work at unprotected heights or around hazardous moving machinery. Tr. 72-73. Dr. Wong testified that several jobs fit within those limitations, including cashier II, assembler/bench production, and hand packing at a 50 percent erosion. Tr. 73-75. Based

on the vocational expert's testimony, the ALJ found that those jobs existed in significant numbers in the national economy.

ALJ Scott filed a decision on May 18, 2011 in which he found the plaintiff was not disabled. The ALJ reached that conclusion by applying the five-step sequential analysis prescribed by the Secretary in 20 C.F.R. § 404.1520. The ALJ found that the plaintiff meets the insured status requirements of the Social Security Act through December 13, 2013 and has not engaged in substantial gainful activity since October 30, 2008 (step one); the plaintiff suffered from degenerative disc disease of the lumbar spine with bilateral S1 radiculopathy, neck pain, and obesity, which are "severe" within the meaning of the Social Security Act (step two); none of these impairments alone or in combination met or equaled a listing in the regulations (step three); and the plaintiff could not perform his previous work as a systems technician, which was semi-skilled and required medium exertion (step four).

In applying the fourth and fifth steps, the ALJ concluded that the plaintiff had the residual functional capacity to perform a limited range of light work, but had these restrictions: he can sit, stand and/or walk for six hours out of eight, but must be afforded an opportunity to alternate between sitting and standing at will; he cannot climb ladders, ropes or scaffolds; he cannot crawl or climb stairs; he can occasionally balance, crouch, stoop, kneel and climb ramps; he can frequently perform fine and gross manipulation bilaterally; he can occasionally perform overhead lifting and reaching; and he can have no exposure to heavy industrial vibrations or hazards such as work at unprotected heights or around hazardous moving machinery. Relying on the vocational expert, the ALJ stated that several jobs fit within those limitations, including cashier II, assembler/bench production, and hand packing, and the ALJ found that those jobs existed in significant numbers in

the national economy. Based on those findings and using Medical Vocational Rule 202.21 as a framework, the ALJ concluded that the plaintiff was not disabled within the meaning of the Social Security Act.

The ALJ noted that Dr. Morello, a chiropractor, opined that the plaintiff is unable to do work of any type because of the pain and weakness in his neck, lower back, and legs. However, the ALJ discounted the opinion of Dr. Morello because he is not considered an acceptable medical source and because he did not describe the plaintiff's functional capacity with specificity. Instead, the ALJ gave the most weight to Dr. Lo and some weight to Dr. Pon and the state agency physical consultative assessments. Following the decision by the ALJ, the plaintiff appealed to the Appeals Council, which denied the plaintiff's request for review on August 20, 2013. He then filed the present action under 42 U.S.C. § 405.

II.

In his summary judgment motion, the plaintiff argues that the ALJ's decision is not supported by substantial evidence. He contends that the ALJ should not have placed any weight on the opinion of Dr. Pon because the medical documentation that he relied upon was manufactured, fabricated, or contains misrepresentations. The plaintiff believes that Dr. Pon exaggerated the plaintiff's ability to engage in certain activities of daily living. The plaintiff insists that he cannot independently shower without significant difficulty; his back "goes out" regularly and any activity he attempts takes prior planning and increasing his regular dosage of anti-inflammatory drugs as early as 48 hours prior to attempting his activity; and he is dependent on his wife to feed himself, although he is able to place pre-paid meals into the microwave oven.

The plaintiff also contends that Dr. Pon misrepresented the plaintiff's ability to take out the garbage and perform other household duties. He references Dr. Pon's assertion that he does not use a cane. Although the plaintiff concedes that is true, the plaintiff says that he does not use a cane because he has difficulty holding a cane or anything else in his hands for longer than a couple of minutes. He is unable to hold anything in his hands, he says, because of a neck injury sustained while he served in the United States Marine Corps.

Dr. Pon noted that the plaintiff sat in his waiting room comfortably and was able to get off the chair and walk into the exam room. However, the plaintiff contends that it is documented in his VA records that he has a bad knee from his time in the service and for which he is receiving VA compensation. The plaintiff contends that he cannot sit or stand for more than a few minutes without extreme discomfort and pain due to his multiple lower back injuries. He says that he was unable to stand straight at Dr. Pon's office due to muscle spasms and pain. The plaintiff contends that he is 5' 10", but Dr. Pon only measured him at 5' 7-3/4" because he was hunched over from the pain and muscle spasms he was experiencing at Dr. Pon's office.

The plaintiff contends that he cannot medically challenge Dr. Pon's facts. However, he believes that the doctor's medical observations display an "obvious pattern of purposeful misinformation to arrive at an outcome that was pre-determined."

This Court has jurisdiction to review the Commissioner's decision pursuant to 42 U.S.C. § 405(g). Judicial review of the Commissioner's decision is limited to determining whether her findings are supported by substantial evidence and whether she employed the proper legal standards. *Brainard v. Secretary of Health and Human Services*, 889 F.2d 679, 681 (6th Cir. 1989) (citing *Richardson v. Perales*, 402 U.S. 389, 401 (1997)). Substantial evidence is more than a mere scintilla

-10-

of evidence, but less than a preponderance. *Cutlip v. Secretary of Health and Human Services*, 25 F.3d 284, 286 (6th Cir. 1994). It is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Kirk v. Sec'y of Health & Human Servs.*, 667 F.2d 524, 535-36 (6th Cir. 1981) (quoting *Richardson*, 402 U.S. at 401). The scope of the court's review is limited to an examination of the record. *Brainard*, 889 F.2d at 681. District courts may not review the evidence *de novo*, make credibility determinations, nor weigh the evidence. *Ibid.* (citing *Reynolds v. Secretary of Health and Human Services*, 707 F.2d 927 (6th Cir. 1983)).

In evaluating the existence of substantial evidence, the court must examine the record as a whole. *Kirk*, 667 F.3d at 536 (citing *Allen v. Califano*, 613 F.2d 139, 145 (6th Cir. 1980)). If the Commissioner's decision is supported by substantial evidence, it must be affirmed even if substantial evidence also supports the opposite conclusion, *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (en banc), and even if the reviewing court would decide the matter differently, *Kinsella v. Schweiker*, 708 F.2d 1058, 1059 (6th Cir. 1983).

The plaintiff argues that the ALJ's conclusion that the plaintiff can perform light work is inconsistent with his subjective experiences of pain. "It is well settled that pain alone, if the result of a medical impairment, may be severe enough to constitute disability." *King v. Heckler*, 742 F.2d 968, 974 (6th Cir. 1984) (citing *King v. Secretary of Health and Human Services*, 667 F.2d 524, 538 (6th Cir. 1981)). However, "[a]n individual's statements as to 'pain or other symptoms will not alone establish that [he is] disabled.'" *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 531 (6th Cir. 1997) (quoting 20 C.F.R. § 404.1529(a)). The following two-prong test guides the court's evaluation of a claimant's assertions of disabling pain:

> First, we examine whether there is objective medical evidence of an underlying medical condition. If there is, we then examine: (1) whether objective medical

> evidence confirms the severity of the alleged pain arising from the condition; or (2) whether the objectively established medical condition is of such a severity that it can reasonably be expected to produce the alleged disabling pain.

*Ibid.* "[T]he Commissioner has the power and discretion to weigh all of the evidence and to resolve the significant conflicts in the administrative record." *Ibid.* "Discounting credibility to a certain degree is appropriate where an ALJ finds contradictions among the medical reports, claimant's testimony, and other evidence." *Ibid.* (citing *Bradley v. Secretary of Health and Human Servs.*, 862 F.2d 1224, 1227 (6th Cir. 1988)).

The plaintiff testified that his lower back pain is constant and creates difficulty performing personal self-care. He said that he experiences constant "stabbing" pain in his lower back, and described other limitations in walking, lifting, and prolonged siting. However, the ALJ concluded that the plaintiff's testimony regarding the intensity, persistence, and limiting effects of his symptoms are inconsistent with his medical records and the testimony of several doctors.

The ALJ made specific reference to Dr. Pon's evaluation and those of Dr. Pancho and Dr. Amon. They provided evidence that reflected the residual functional capacity determined by the ALJ.

Dr. Timothy Lo conducted a Panel Qualified Medical Evaluation of the plaintiff on October 28, 2010. He concluded that the plaintiff could perform functions consistent with light work. According to 20 C.F.R. § 404.1567(b), "light work"

> involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there

> are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

Dr. Lo, who reviewed the plaintiff's medical records and met with him for more than two hours, diagnosed the plaintiff with chronic pain syndrome and lumbar degenerative disc disease with associated bilateral S1 radiculopathy. But he found only mild restrictions in range of motion of the cervical spine. Although he also found significant tenderness to palpation over the lower lumbar para-spinal muscles, he concluded that the plaintiff's restrictions were not completely disabling and permitted him to perform a limited range of light work. That opinion was supported by Dr. Jensen, an orthopedic medical expert, who reviewed the plaintiff's medical records and concluded that the plaintiff could perform light work. Although Dr. Jensen concluded that the plaintiff had multi-level lumbar spine degenerative disc disease, Dr. Jensen testified that the plaintiff could lift ten pounds frequently; could stand and walk up to six hours; required the opportunity to change position every thirty minutes; could occasionally manage steps and ramps; could occasionally walk on uneven terrain; and would be precluded from exposure to heavy industrial vibration.

The evidence in this record is abundant and well supports the ALJ's decision. Even though there might be contrary evidence, when deciding under 42 U.S.C. § 405(g) whether substantial evidence supports the ALJ's decision, the Court "may not try the case *de novo*, nor resolve conflicts in evidence, nor decide questions of credibility." *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984); *see also Jordan v. Comm'r of Soc. Sec.*, 548 F.3d 417, 422 (6th Cir. 2008); *Smith v. Halter*, 307 F.3d 377, 379 (6th Cir. 2001).

"It is . . . for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007). Instead, "[t]his court's review of the Commissioner's decision is limited to determining whether it is supported by substantial

evidence and was made pursuant to proper legal standards." *Ibid.* The plaintiff alleges that Dr. Pon's findings are fabricated, but there is no evidence in the record that Dr. Pon — or any other physician — misrepresented information about the plaintiff's ability to perform light work. And, although the plaintiff was represented by counsel, he did not voice any objections to admitting Dr. Pon's report into the record or allege that it contained any inaccuracies.

Although Dr. Morello, a chiropractor, opined that the plaintiff is unable to do work of any type, the ALJ had the discretion to give his opinion no weight because a chiropractor is not an acceptable medical source under the guidelines. *Walters*, 127 F.3d at 530 ("[T]he ALJ has the discretion to determine the appropriate weight to accord a chiropractor's opinion based on all evidence in the record since a chiropractor is not a medical source" under 20 C.F.R. § 404.1513(a)); *see also Schmiedebusch v. Comm'r of Soc. Sec. Admin.*, 536 F. App'x 637, 648 (6th Cir. 2013) ("Chiropractors are not a listed medical source who can provide evidence to establish an impairment, and ALJs are not required to give weight to a chiropractor's opinion.") (internal citations omitted)).

### III.

Based on the administrative record, the ALJ applied the correct legal standards and his conclusions are supported by substantial evidence in the record.

Accordingly, it is **ORDERED** that the plaintiff's motion for summary judgment [dkt. #17] is **DENIED**, the defendant's motion for summary judgment [dkt. #25] is **GRANTED**, and the decision of the Commissioner is **AFFIRMED**.

It is further **ORDERED** that the complaint is **DISMISSED**.

s/David M. Lawson
DAVID M. LAWSON
Dated: March 31, 2015          United States District Judge

**PROOF OF SERVICE**

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on March 31, 2015.

                                      s/Susan Pinkowski
                                      SUSAN PINKOWSKI